**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-0005-WJM-NYW

CAROLYN DEDMON,

    Plaintiff,

v.

CONTINENTAL AIRLINES, INC.,
UNITED AIR LINES, INC., and
UNITED CONTINENTAL HOLDINGS, INC.,

    Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S EXPERT DISCLOSURES**

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants' Motion to Strike Plaintiff's Expert Disclosures ("Motion to Strike Experts") filed on November 13, 2014 [#62], which was referred to this Magistrate Judge pursuant to the Order of Reference "to conduct nondispositive proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a)" [#10] and the Memorandum dated November 13, 2014 [#62]. The court has reviewed the pending motion, the Opposition filed by Plaintiff Carolyn Dedmon [#71], the Reply filed [#73], and the exhibits thereto.  The court has also considered arguments of counsel made during the hearing on February 26, 2015; the entire case file; and the applicable law.  For the reasons discussed below, the court GRANTS in part and DENIES in part Defendants' Motion to Strike Experts.

## BACKGROUND

This case arises out of an alleged injury sustained by Plaintiff Carolyn Dedmon ("Plaintiff" or "Ms. Dedmon") incurred during the course of her employment at Denver International Airport ("DIA"). As Ms. Dedmon walked through the kitchen of Defendant Chelsea Food Services ("CFS"), a wholly-owned subsidiary of United Airlines, she slipped, fell, and allegedly as a result, suffered serious bodily injury. [#3, ¶ 8]. Ms. Dedmon filed her original Complaint against CFS, Continental Airlines, Inc., United Air Lines, Inc., and United Continental Holdings (collectively, "Defendants" or "United") on October 22, 2012, in Denver County District Court, alleging three counts: (1) premises liability; (2) negligence; and (3) *res ipsa loquitor*. [#3].

United filed a Notice of Removal on January 4, 2013. [#1]. Four days later, Ms. Dedmon filed a First Amended Complaint, dismissing CFS and its claims for negligence and *res ipsa loquitor.*. [#9]. United then answered on January 22, 2013 [#15], and the court entered a Scheduling Order on March 11, 2013, governing pretrial matters including discovery. [#21]. The Scheduling Order set the following deadlines: (1) Plaintiff's expert disclosures and reports on July 11, 2013; (2) Defendants' expert disclosures and reports on August 9, 2013; (3) close of fact discovery on September 11, 2013, and (4) close of expert discovery on October 11, 2013. [*Id.*]. The Scheduling Order expressly provided that "The scheduling order may be altered or amended only upon a showing of good cause." [*Id.* at § 13].

On July 29, 2013, the Parties jointly moved the Court for modification of the Scheduling Order, explaining that the amount of medical records and potential out of state depositions necessitated additional time. [#23]. The court granted the motion, resetting the schedule for expert disclosures with Plaintiff's designation of experts no later than October 11, 2013;

Defendants' designation of experts no later than November 9, 2013; and Plaintiff's designation of rebuttal witnesses no later than December 13, 2013. [#25]. The court also set the date for the close of fact discovery on December 11, 2013; and expert discovery on January 11, 2013. [*Id.*]

The Parties were unable to meet those deadlines, and on October 28, 2013, filed another Joint Motion to Modify the Scheduling Order, seeking a further extension to the deadlines based on the volume of medical records and medical providers in this case. [#26]. The court held a hearing on the Joint Motion to Modify the Scheduling Order on November 19, 2013, and permitted the further extension of the operative deadlines as follows: (1) Plaintiff's expert disclosures on January 20, 2014; (2) Defendants' expert disclosures (affirmative and rebuttal) on February 18, 2014; (3) Plaintiff's rebuttal expert disclosures on March 14, 2014; and (4) close of all discovery (without distinction between fact and expert) on April 15, 2014. [#29]. In granting the Joint Motion, the court indicated that it "[did] not intend to extend the schedule again based on difficulties in obtaining medical records through the use of release forms." [*Id.*]

On March 18, 2014, Ms. Dedmon filed third Motion to Modify the Scheduling Order, to which Defendants objected. The court heard argument on April 4, 2014 on the Motion to Modify the Scheduling Order, during which it granted an extension of time to the close of all discovery (again, without distinction between fact and expert) until July 14, 2014, and for the filing of dispositive motions until July 14, 2014. [#44]. The court did not alter the timing for expert disclosures, which remained as previously set – January 20, 2014 for Plaintiff's experts; February 18, 2014 for Defendants'; and March 14, 2014 for any Plaintiff's rebuttal expert. During that hearing, in arguing against an extension of time, defense counsel raised the issue of Ms. Dedmon's expert disclosures as follows:

> And to suggest that those extensions were just for our benefit is not an accurate characterization of what was going on. Of course plaintiff needed those

> extensions. Extensions because plaintiff had not done anything in the case. Plaintiff hasn't issued written discovery. Plaintiff hasn't noticed any depositions. Plaintiff has not, um, served any expert disclosures. Nothing."

[#62-2, at 6:22-7:4]. In response to defense counsel's representation to the court about expert disclosures, Plaintiff's counsel stated:

> Defendants mentioned that we hadn't filed expert disclosures, 26(a)(2)s. I don't know that that is correct. I'll have to look at that. I do know one thing, though. We have one retained expert in this case. Her report, CV, fee schedule – she's an engineering expert – all that stuff was provided back many months ago. And I distinctly remember e-mailing Mr. Werge – Mr. Maye may have been on the email too – telling them many months ago that, hey, there's not going to be any – this is our only retained expert and the only other experts – the only other people listed on our 26(a)(2)s are going to be the same treating medical providers that are listed in the 26(a)(1)s whose information you have, medical records you have, all that stuff.

[*Id.* at 24:23-25:10]. Discovery closed on the matter on July 14, 2014, without United taking the deposition of any experts now designated by Ms. Dedmon, except Dr. Ghiselli and Dr. Reinhard. [#62].

On November 13, 2014, presumably alerted by Ms. Dedmon's listing of five experts in her preliminary witness list associated with the proposed Final Pretrial Order,[1] Defendants filed a Motion to Strike Plaintiff's Expert Disclosures pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure [#62]. Plaintiff opposed the Motion [#71], United filed a Reply [#73], and the

---

[1] The Final Pretrial Order was entered by the court on December 8, 2014. [#70]. The court ordered the Parties to submit corrected exhibit lists no later than February 16, 2015. [*Id.* at 10]. Defendants submitted a corrected exhibit list on February 17, 2015. [#76]. Plaintiff submitted a corrected exhibit list in two filings on on March 2, 2015 [#78, #79], though one is denoted as a "Witness List." [#78]. For purposes of this Order, the court believes that the expert witnesses at issue are the ones identified by Plaintiff in its Preliminary Witness List [#65-1], namely Anne Stodola, P.E.; Kenneth S. Greenberg, D.O.; Gary Ghiselli, M.D.; Kenneth J. Allan, M.D.; David Reinhart, M.D.; Bethany Wallace, D.O.; Linda Tetor, M.D.; Micheal Finn, M.D.; Carrie Austin, M.D.; Barry Ogin, M.D.; Davis Hurley, M.D.; Thomas Mordick, M.D.; Robert Spencer, M.D.; Roland D. Reinhard, M.D.; and Natasha K. Creighton, M.D. [#65-1].

court heard oral argument on February 26, 2015 [#77]. For the reasons stated below, Defendants' Motion to Strike is GRANTED in part, and DENIED in part.

## ANALYSIS

**I.    Standard of Review**

Rule 26(a)(2) of the Federal Rules of Civil Procedure set out certain requirements for disclosure by experts, both specially-retained and non-retained. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2) obligations cannot be ignore or dismissed as a mere formality. *Anderson v. Seven Falls Co.*, No. 12-cv-1490-RM-CBS, 2013 WL 3771300, * 5 (D. Colo. July 18, 2013). Rather, such disclosures are intended to "aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Id.* (citing *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir 2000)).

A violation of Rule 26(a)(2) is addressed by the court pursuant to Rule 37(c) of the Federal Rules of Procedure. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>    (B) may inform the jury of the party's failure; and
>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

Fed. R. Civ. P. 37(c)(1). The determination as to whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the court. *Woodworker's Supply, Inc. v. Primcipal Mt. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In exercising its discretion, the court considered four factors: (1) the prejudice or surprise to the impacted party; (2) the ability

to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. *Id.*

## II. Anne Stodola, P.E.

Anne Stodola, P.E., is the only specially-retained expert identified by Ms. Dedmon. Defendants assert that "no expert disclosure was received by Defendants until October 7, 2014, nearly 8 months past Plaintiff's Second deadline to serve such disclosures and almost 3 months <u>after</u> discovery closed." [#62, at 3]. Plaintiff argues Plaintiff's Rule 26(a)(2) Expert Disclosures were served by electronic mail on July 26, 2013, as reflected by the certificate of service attached to the disclosures. [#71, at 2, citing #62-3]. Ms. Dedmon's counsel further relies upon electronic mail correspondence with his former paralegal, purportedly to corroborate that service was properly made. Defendants respond by arguing that the correspondence is "not proof that the actual email containing the disclosures was ever sent." [#73].

In this case, the deadline for Ms. Dedmon to designate her expert witnesses and provide the required reports pursuant to Rule 26(a)(2) was January 20, 2014. [#26]. Rule 26(a)(2)(B) requires that a witness who is specially employed to provide expert testimony in the case to provide a report that contains: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2).

It is undisputed that by electronic mail on July 25, 2013, Ms. Dedmon's counsel provided defense counsel with a report for Ms. Stodola – the identical one then provided again by electronic mail on October 7, 2013.  [*Compare* #62-1 *with* #62-3].  There was some dispute at the hearing as to whether defense counsel was simultaneously provided Ms. Stodola's rate, resume, and testimony history on July 25, 2013. Based on the face of the document, it appears that such information was provided in attachments, denoted as "Statement of Rates Letterhead.pdf," "AS SE Resume.pdf," and "AS Trials Depos 2009 thru 2013.pdf,"  and there is no evidence that contradicts that conclusion – despite the fact that such attachments were not included in the exhibit attached by Defendants to their Motion to Strike.  [#62-1].  In addition, the electronic mail message accompanying the July 25 disclosure specifically states, "Attached is the report, rate, resume, and testimony history of our only retained expert, Anne Stodola.  I'm still working on the official disclosures pleadings because, as you well know, Carolyn Dedmon has a lot of treating physicians."  [*Id.*]   But Rule 26(a)(2)(B) does not require any "official disclosures pleadings," or paper, and Defendants do not challenge the sufficiency of Ms. Stodola's disclosure, only the timing.  [#62, #73].   Based on the record before it, this court concludes that the expert disclosure of Ms. Stodola was timely, and to conclude otherwise would violate the judicial tenet of valuing substance over form.  *See Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.,* 567 F.3d 1191, 1198 (10th Cir. 2009).   Any prejudice to Defendants based on their failure to take Ms. Stodola's deposition during the almost-year time period between July 25, 2013 and July 14, 2014 cannot be attributed to Ms. Dedmon. Defendants' Motion to Strike with respect to Ms. Stodola is denied.[2]

---

[2] This holding does not resolve whether any expert, including but not limited to Ms. Stodola, is qualified under Rule 702 of the Federal Rules of Evidence or whether her testimony is otherwise

### III.     Treating Physicians

Ms. Dedmon also identified fourteen treating physicians as either will-call or may-call expert witnesses. [#65-1]. All fourteen are included in "Plaintiff's F.R.C.P. Rule 26(a)(2) Expert Disclosures," attached as an exhibit to Defendants' Motion to Strike. [#62-3]. The Parties vigorously dispute whether (1) this disclosure was made prior to the January 20, 2014 deadline; and (2) whether such disclosures made without reports are sufficient under Rule 26(a)(2). The court will take each of these issues, along with considering whether there was substantial justification of harm, in turn.

#### A. Timing

While Defendants argue that the first time that they received Plaintiff's F.R.C.P. Rule 26(a)(2) Expert Disclosures was on October 7, 2014, the certificate of service for the disclosures reflect service by electronic mail on July 26, 2013 by Diane Parsons. [#62-3]. Under Rule 5(b) of the Federal Rules of Civil Procedure, service of a paper may be made by sending it by electronic means if the person consented in writing – in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served. Fed. R. Civ. P. 5(b)(2)(E). A court will treat a certificate of service as prima facie evidence that service occurred on the date listed on the certificate, unless a party offers evidence to the contrary. *See Chesson v. Jaquez*, 986 F.2d 363, 365 (10th Cir.1993); *Portley-El v. Milyard*, No. 06-cv-00146-PSF-MJW, 2006 WL 3371642, at *1 (D. Colo. Nov. 21, 2006). As officers of the court during oral argument, both Mr. Maye and Mr. Werge represented that they did not receive Plaintiff's F.R.C.P. Rule 26(a)(2) Expert Disclosures as of July 26, 2013, and Mr. Gilbert, Plaintiff's counsel, was unable to produce any additional confirmation that the

---

admissible at trial. The court's analysis and ruling are limited to whether she complied with Rule 26(a)(2) and Rule 37(c)(1) of the Federal Rules of Civil Procedure.

disclosures were, in fact, sent or received. Therefore, by the plain terms of Rule 5(b)(2)(E), service of Plaintiff's expert disclosures was not effective – at least not until October 7, 2014, when they were undisputedly received by defense counsel. [#62-3]. Accordingly, this court finds that Ms. Dedmon's disclosure of her treating physicians as experts was untimely.

### B. Sufficiency of Disclosures

Defendants also assert that Plaintiff failed to propound any expert reports by any of her treating physicians, and she was required to do so under Rule 26(a)(2)(B). [#62, at 9-11]. Ms. Dedmon argues that she was not required to propound any expert reports, and her disclosures of pursuant to Rule 26(a)(1) were sufficient to alert Defendants of her intention to use her treating physicians as experts. [#71, at 8-9]. This court has traditionally employed a burden-shifting analysis for determining whether the requirements of Rule 26(a)(2) have been satisfied. *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 250108, at *1 (D. Colo. 2010). The party moving to strike the witness bears the initial burden of showing that the disclosing party failed to comply with Rule 26(a)(2) properly. *Id.* Then the burden shifts to the disclosing party to demonstrate sufficiency. *Id.*

Ordinarily, physicians providing a party with medical treatment are designated as non-retained and, thus, are exempt from the report requirement. *Id.* Their testimony is based on upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purposes of giving an opinion in anticipation of trial. *Trejo v. Franklin*, No. 04-cv-02523-REB, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007). When, however, a witness opines as to causation, prognosis, or future disability, the physician is going beyond what she saw and did and why she did it, and is giving an opinion formed because of the lawsuit, and she is required to file a written report pursuant to Rule 26(a)(2)(B). *See Nagle v. Mink*, No. 10-

cv-01935-PAB-MEH, 2011 WL 3861435, at *3. Even non-retained experts, however, must provide certain information pursuant to Rule 26(a)(2)(C).

A review of Plaintiff's F.R.C.P. 26(a)(2) Expert Disclosures demonstrates that Ms. Dedmon is offering all fourteen treating physicians to "provide expert opinions at the time of trial pertaining to **causation, damages, prognosis, impairment, permanency, past and future physical and mental limitations, the effect of the condition on past and future economic loss, disabilities and consequential inability to work and/or work restrictions, the cost and reasonableness of past and future medical or rehabilitative treatment and/or medication and/or adaptive equipment, and/or residential or work modifications, any and all issues raised by the Defendant, and any other issues related to injuries arising out of the incident.**" [#62-3, at 2 (emphasis added)]. In addition, each physician is also offered to testify "that the proximate cause of Ms. Dedmon's injuries is the incident of October 23, 2010, and that injuries suffered by Ms. Dedmon in the incident resulted in his [sic] symptoms." [*Id.* at 3-15]. Ms. Dedmon further offers these physicians for the purpose of testifying that the cost of her medical treatment was "reasonable, as shown by the medical bills and summary of charges." [*Id.*] And each physician's opinions will be based on not only her own knowledge, education, training, and experience, but also "medical records and radiology studies reviewed, related to the incident on October 23, 2010, [and] excerpts of depositions of the parties." *Id.*

It is clear that these physicians are offered for much more than their personal knowledge and opinions based on their respective treatment of Ms. Dedmon. Instead, their identified topics for opinions appear to be based upon information acquired by outside sources and directed to issues specifically raised by this lawsuit, and not within the ordinary course of medical treatment of Ms. Dedmon. As such, to the extent that these physicians are offered for opinions related to

causation, damages, permanency, past and future physical and mental limitations, the effect of the condition on past and future economic loss, disabilities and consequential inability to work and/or work restrictions, the cost and reasonableness of past and future medical or rehabilitative treatment and/or medication and/or adaptive equipment, and/or residential or work modifications, any and all issued raised by the Defendant, and any other issues related to injuries arising out of the incident, Ms. Dedmon was obligated to propound formal reports for each such physician pursuant to Rule 26(a)(2)(B). *See Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-cv-02848-REB-MEH, 2014 WL 3543714 (D. Colo. July 16, 2014). Ms. Dedmon has undisputedly failed to do so.

Even if Ms. Dedmon was only obligated to provide information regarding these treating physicians pursuant to Rule 26(a)(2)(C), Plaintiff's F.R.C.P. Rule 26(a)(2) Expert Disclosures are still deficient. The Disclosures fail to provide a summary of the facts and opinions to which each physician is expected to testify. Instead, the disclosure for each physician is simply an almost identical, formulaic recitation of conclusory statements that provides United no meaningful understanding of the subject matter of the opinion(s), or the factual basis of such opinion(s), or even any distinction of the testimony of one physician from another. [# 62-3].

### C. Application of the *Woodworker's* Factors

The findings that Plaintiff's disclosures were untimely and insufficient under Rule 26(a)(2) does not, however, conclude the relevant analysis. The court may nonetheless decline to strike the rebuttal report if the violations are found to be either substantially justified or harmless. *See Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, No. 10-cv-02516-WJM-KLM, 2014 WL 4651643, *2-3 (D. Colo. Sept. 18, 2014). Ms. Dedmon offers no evidence or argument that her failure to comply with Rule 26(a)(2)(B)

requirements was substantially justified. Instead, her arguments focus on the assertion that any failure to disclose is harmless, because the physicians (except Dr. Creighton) were disclosed during discovery pursuant to Rule 26(a)(1), that the medical records for the physicians were provided, and that United could have deposed any of the treating physicians and chose not to. [#71]. Defendants argue that they have been irreparably prejudice, such that the only appropriate outcome is to strike all of Plaintiff's expert designations of treating physicians.

In applying the four *Woodworker's* factors, this court finds that the failure was not substantially justified or harmless, except with respect to Dr. Ghiselli and Dr. Reinhard who were deposed by United during discovery.

### 1. Prejudice

Ms. Dedmon argues that there is no prejudice to Defendants, because Ms. Dedmon identified her all but one of her treating physicians in her prior disclosures, provided blanket releases for her medical records to United and United could have chosen to depose any of her treating physicians during discovery. [#71, at 4-6]. Certainly, Defendants could have taken the depositions of any and all of Ms. Dedmon's treating physicians (except Dr. Creighton) during discovery, and asked them about their personal observations and care of Ms. Dedmon. But Defendants had no reason to believe that Ms. Dedmon would be offering her treating physicians on a myriad of other topics, including but not limited to proximate cause, past and present damages, and the reasonableness of Ms. Dedmon's medical costs and ask those physicians questions about their respective opinions. Indeed, even with Plaintiff's F.R.C.P. 26(a)(2) Disclosure, it would have been difficult for United to prioritize which physician to depose or frame the appropriate topics. And without the requisite disclosures, United had no opportunity to

evaluate the need for rebuttal experts or to identify and designate such rebuttal experts, if necessary.

Drs. Ghiselli and Reinhard, however, stand in a slightly different posture. It is undisputed these physicians were disclosed with Plaintiff's Initial Disclosures, that United took the depositions of these physicians on June 19 and June 20, 2014 (prior to the close of discovery) and defense counsel admitted during oral argument that Plaintiff put no restriction on them in terms of timing and questions. Defendants also do not dispute that they had the medical records for Drs. Ghiselli and Reinhard prior to such depositions, which presumably reflected their respective observations, treatments, and medical impressions of Ms. Dedmon. *See Carbaugh*, 2014 WL 3543714 at *3 ("Ordinarily, physicians providing a party with medical treatment are designated as non-retained and, thus, are exempt from the report requirement. [T]heir testimony is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial. The same rationale extends to treating physician opinions regarding causation and prognosis based on examination and treatment of the patient. In addition, because treating physicians presumably keep medical records documenting their observations, findings, and treatment regimes, a written report usually would be unnecessary.") (internal citations and quotation omitted). And to the extent that Drs. Ghiselli and Reinhard are limited to providing testimony to observations and opinions reflected in their medical records and at deposition, the court finds that any prejudice to Defendants is minimal and can be cured, as discussed below. *Carrillo v. B&J Enters., LLC*, 2013 U.S. Dist. LEXIS 12435 at * 10 (D. Nev. Jan. 29, 2013) (because treating physicians were disclosed in initial disclosures and defendants had an adequate opportunity to review the relevant medical records and to conduct discovery accordingly, prejudice to defendants cured by limiting

anticipated "testimony to the subject matter of their treatment as disclosed in the medical records and to opinions formed in the course of treatment").

### 2. Ability to Cure/Delay of Trial

The prejudice to Defendants with respect to all but Drs. Ghiselli and Reinhard cannot be cured by simply reopening discovery. This case was originally filed over two years ago, on January 1, 2013. The court provided the Parties multiple extensions and over a year to complete discovery. [#21, #25, #29, #44]. The Final Pretrial Conference has been held, a Final Pretrial Order entered, and a September 2015 trial date set. [#69, #70, #72]. Despite Plaintiff's counsel's offer to make any of Ms. Dedmon's treating physicians available for deposition, such reopening simply invites more potential delay and disputes into this proceeding, given the breadth and vagueness of the topics associated with each potential physician witness. Indeed, discovery would need to be reopened generally, Plaintiffs would need to propound proper expert reports, time would need to be allowed for Defendants to identify, designate, and provide reports for appropriate rebuttal witnesses (if desired), and further time would need to be permitted for depositions. There simply is insufficient time, or justification, for such a monumental "do-over."

With respect to Drs. Ghiselli and Reinhard, the court finds that appropriate relief is available to cure or mitigate any prejudice to Defendants. The court orders that any testimony offered by Dr. Ghiselli and/or Dr. Reinhard will be necessarily limited to topics disclosed in her medical records prior to the date of this Order, and not first introduced during their respective depositions. United has up to and including April 3, 2015 to designate and provide expert reports for up to two rebuttal experts to Drs. Ghiselli and Reinhard, at its election. Any deposition of any United rebuttal experts will occur prior to May 3, 2015, and any cost associated with any United rebuttal expert's time for the deposition will be borne by Ms.

Dedmon, with each party otherwise bearing its own attorney's fees and costs (including transcription).

### 3. Plaintiff's Bad Faith or Willfullness

Despite the circumstances culminating with this Motion to Strike, the court assigns no bad faith to Plaintiff, but cannot reward Plaintiff's lack of diligence. Plaintiff's counsel was alerted, at the latest, on April 3, 2014 to Defendants' belief that Rule 26(a)(2) disclosures had not been received. [#62-2, at 24:22-24]. And despite representing to the court that "It's, quite honestly, got me a little anxious if we did miss that," [*id.* at 25:25-26:1], Plaintiff's counsel failed to exercise any diligence in either affirmatively confirming delivery of the Rule 26(a)(2) disclosures or re-sending them at that time or in the three months prior to the July 14, 2014 close of discovery. Had Plaintiff's counsel simply resent the Expert Disclosures on or near April 3, the Parties (and court) might have had time prior to the close of discovery on July 14 to address the issues presented now. Without such diligence, the court has no viable alternative at this time but to strike Ms. Dedmon's treating physicians, other than Drs. Ghiselli and Reinhard, from testifying as experts in any capacity. The court also finds that while Plaintiff's failures related to Drs. Ghiselli and Reinhard are not substantially justified, they are harmless to the extent any testimony by either Dr. Ghiselli or Dr. Reinhard is limited to the observations and opinions formed during the course of treatment and reflected in Ms. Dedmon's medical records prior to the date of this Order.

### CONCLUSION

Based on the court's review of the papers and supporting evidence, the oral arguments, and application of the pertinent case law, IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Strike Plaintiff's Expert Disclosures is GRANTED in part, and DENIED in part;

(2) The court STRIKES (as qualified by Section Three of this Order) the Plaintiff's fourteen (14) treating physician as experts, including but not limited to the issues of causation, damages, prognosis, impairment, permanency, past and future physical and mental limitations, the effect of the condition on past and future economic loss, disabilities and consequential inability to work and/or work restrictions, the cost and reasonableness of past and future medical or rehabilitative treatment and/or medication and/or adaptive equipment, and/or residential or work modifications, any and all issues raised by the Defendant, and any other issues related to injuries arising out of the incident;

(3) The court PERMITS Plaintiff to offer Drs. Ghiselli and Reinhard, LIMITED to only observations and opinions clearly reflected in their respective medical records prior to the date of this Order;

(4) Ms. Dedmon may offer Anne Stodola, P.E., as an expert, consistent with her opinion rendered on July 23, 2013; and

(5) Nothing in this Order will be interpreted to address the <u>admissibility</u> of any expert, but is limited to Plaintiff's ability to <u>proffer</u> such witness pursuant to Rule 702 of the Federal Rules of Evidence.

DATED March 6, 2015.   BY THE COURT:

/*s/* Nina Y. Wang_____
United States Magistrate Judge