**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-0005-WJM-NYW

CAROLYN DEDMON,

      Plaintiff,

v.

CONTINENTAL AIRLINES, INC.,
UNITED AIRLINES, INC., and
UNITED CONTINENTAL HOLDINGS, INC.,

      Defendants.

---

## ORDER ON MOTIONS *IN LIMINE*

---

Before the Court are competing Motions *in Limine* filed by Plaintiff Carolyn

Dedmon ("Dedmon") and Defendants Continental Airlines, United Airlines, and United

Continental Holdings (collectively, "United").  (*See* ECF No. 124 (United's Motion); ECF

No. 133 (Dedmon's Motion).)  For the reasons explained below, Dedmon's Motion is

denied; and United's Motion is granted in part, denied in part, denied without prejudice

in part, and denied as moot in part.

## I.  D.C.COLO.LCivR 7.1(a) CONFERRAL DISPUTE

In United's Motion, United's counsel says that he e-mailed, called, and left

voicemails for Dedmon's counsel on the day the motion was filed, but "was

unsuccessful" in his attempts to communicate with Dedmon's counsel.  (ECF No. 124 at

1.)  Dedmon's counsel responds that the first e-mail arrived at 5:06 p.m. on that day—a

Friday—and he received two voicemails on his office phone later that evening.  (ECF

No. 160 at 1.)  United then filed its Motion at 9:07 p.m. that night.  (*Id.*)  Dedmon requests that the Court deny United's Motion solely for failing to comply in good faith with D.C.COLO.LCivR 7.1(a)'s conferral requirement.

Dedmon's counsel makes all of these representations simply as statements in his client's Response brief.  He does not attach a declaration, supporting documents, or anything of the like.[1]  On this record, and in light of the gravity of this issues raised in United's Motion, the Court will not consider whether to sanction United's counsel for allegedly evading the spirit of D.C.COLO.LCivR 7.1(a).  *Cf. Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003) (denying motion because, among other reasons, "Plaintiff's counsel flagrantly violated the requirements of Rule 7.1A").

Even so, it is obvious from United's Motion that United's counsel prepared it in haste.  As will become evident below, United fails to support most of its arguments with a record sufficient to adjudicate the requested evidentiary exclusions.  Thus, to the extent a "sanction" is warranted for an alleged failure to meaningfully comply with D.C.COLO.LCivR 7.1(a), it is simply that the same haste which supposedly made D.C.COLO.LCivR 7.1(a) compliance ineffective will also lead to most of United's requests being denied.

## II.  UNITED'S MOTION

United's Motion is, in reality, seventeen separate motions, which the Court will address, for the most part, in the order presented.

---

[1] It is, however, a matter of public record that United filed its Motion at 9:07 p.m.  *See* https://ecf.cod.circ10.dcn/cgi-bin/DisplayReceipt.pl?13662316857383-L_1_0-1.

**A.     Evidence Regarding Causation, Prognosis, and Similar Subjects (Motion Nos. 1, 2, and 12)**

1.     <u>Motion No. 1</u>

Previously, United States Magistrate Judge Nina Y. Wang ruled that Dedmon's failure to propound certain expert reports required striking Dedmon's

> fourteen (14) treating physician[s] as experts, including but not limited to the issues of causation, damages, prognosis, impairment, permanency, past and future physical and mental limitations, the effect of the condition on past and future economic loss, disabilities and consequential inability to work and/or work restrictions, the cost and reasonableness of past and future medical or rehabilitative treatment and/or medication and/or adaptive equipment, and/or residential or work modifications, any and all issues raised by the Defendant, and any other issues related to injuries arising out of the incident[.]

(ECF No. 80 at 16.)  The Magistrate Judge, however, permitted Dedmon to put on the testimony of Drs. Gary Ghiselli and David L. Reinhard "LIMITED to only observations and opinions clearly reflected in their respective medical records prior to [March 6, 2015]."  (*Id.*)  No party filed any timely Rule 72(a) objection to this ruling.  (*See* ECF No. 96.)

United now argues that "[t]here are no observations or opinions formed during the course of treatment clearly reflected" in Dr. Ghiselli's or Dr. Reinhard's records regarding the prohibited issues in the block quote above; therefore, "none of [Dedmon's] treating physicians, including Dr. Ghiselli and Dr. Reinhard, can provide expert testimony on any subject."  (ECF No. 124 ¶ 1.)  To the extent this is meant as a motion, it is too vague for the Court to order any relief at this point.  The Magistrate Judge's order will be enforced at trial, but the Court cannot rule in the abstract that

there is no circumstance in which Drs. Ghiselli or Reinhard may present expert testimony.  Some of the "opinions clearly reflected in their respective medical records" (ECF No. 80 at 16), such as their diagnoses, may have been formed through their "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702(a), particularly their medical training.  Those opinions would then be considered expert testimony.  But United has not attached any treatment records to its Motion *in Limine*, so the Court cannot evaluate this possibility.  Accordingly, United's Motion No. 1 is denied without prejudice.

    2.   <u>Motion No. 2</u>

The Magistrate Judge's above-quoted order plainly prohibits Dedmon's treating physicians from testifying regarding causation.  United seeks to extend this to any testimony from any witness "that the subject incident caused [Dedmon's] alleged injuries."  (ECF No. 124 ¶ 2.)  United argues that expert testimony is required to establish that a particular event caused a plaintiff's injuries, particularly if the plaintiff claims that preexisting conditions have been aggravated.  (*Id.*)

Again, United has not provided enough context to permit this Court to rule on this issue, such as deposition testimony from Dedmon explaining the alleged effect on her preexisting conditions.[2]  United's Motion No. 2 is therefore denied without prejudice.  The Court nonetheless provides the following guidance, although necessarily in the abstract.

---

[2] United's Motion *in Limine* provides no description of the preexisting conditions or even a citation to something already in the record regarding those conditions.  The Court is independently aware of United's argument in the Final Pretrial Order regarding Dedmon's preexisting conditions, but it is just that—argument.  (*See* ECF No. 70 at 7.)  United offers no citations to evidence in the record.  Thus, there is no basis on which the Court can evaluate any specific challenge regarding any specific preexisting condition.

"Courts have allowed lay testimony about medical causation in cases where causation is fairly obvious." *Llewellyn v. Ocwen Loan Servicing, LLC*, 2015 WL 2127892, at *3 (D. Colo. May 5, 2015).  Assume, for example, that Dedmon's elbow struck the ground during the alleged slip-and-fall.  If Dedmon were to testify that her elbow had been feeling fine before the fall and hurt immediately after the fall, the jury would not need the assistance of an expert to infer that the fall caused her elbow to hurt.  *Cf. Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) ("No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations.  Here, the cause of [the prisoner's] pain was perfectly clear: [the guard] beat him." (citation omitted)).

The waters become murkier, however, when a witness moves away from acute injuries and into lingering or chronic injuries.  Although the Court does not make any definitive ruling, it may be enough to establish causation if (extending the elbow hypothetical above) Dedmon testified that she never had elbow problems before the accident, yet her elbow has never regained its full range of motion since the accident. On the other hand, it would probably require supporting expert testimony if Dedmon claimed that she developed problems not obviously connected to the elbow, such as a loss of manual dexterity.  *Cf. Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 523–24 (E.D. La. 2002) (granting summary judgment against plaintiff on causation where plaintiff had no testimony beyond his own that choking on a chicken bone led to impotency, migraine headaches, and PTSD).

The waters are similarly murky when it comes to preexisting conditions.  If Dedmon were to testify that she had mild arthritis in her elbow before the accident and

5

much more severe arthritis ever since, her testimony alone may be sufficient to establish causation.  If, however, she were to testify that the injury to her elbow (or shock of the fall in general) caused a flare-up in a preexisting gastrointestinal condition, expert medical causation testimony would likely be necessary.  *Cf. Llewellyn*, 2015 WL 2127892, at *2–3 (excluding plaintiff's testimony that a stressful incident led to a Crohn's Disease flare-up).

Again, these examples are for guidance only.  The Court has received no clear account of the medical conditions Dedmon intends to claim at trial and the supporting evidence she intends to present.

3.    Motion No. 12

A matter of surprisingly vehement dispute in this case is Dedmon's claim that she slipped on cooking oil, as opposed to some other substance.  "United seeks to bar (redact) any reference in [Dedmon's] medical records regarding [Dedmon] reportedly slipping on cooking oil."  (ECF No. 124 ¶ 12.)  United claims that this information (presumably reported by Dedmon to her doctors) is hearsay and does not qualify for admission under the business records exception. *See* Fed. R. Evid. 803(6).  Dedmon counters that a different hearsay exception, Rule 803(4), covers her treatment records. (ECF No. 160 at 5.)  Rule 803(4) deems admissible "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."

United has not favored the Court with the medical records in question, nor has it described the ways in which the medical records discuss cooking oil.  Nonetheless, the

Court holds that, under Rule 803(4), informing your doctor of the substance on which you believe you slipped is a statement of "general cause" and is "reasonably pertinent" to diagnosis or treatment.  It is simply unnatural for an individual to recount a slip-and-fall to his or her doctor without recounting the presumed substance on which the individual slipped.  *See* Fed. R. Evid. 803, 1972 Advisory Committee Notes to Rule 803(4) ("The . . . guarantee of trustworthiness extends to . . . statements as to causation, reasonably pertinent to [treatment or diagnosis].").  Moreover, a doctor might reasonably want to know what the individual slipped on because it could inform the recommended course of treatment.  Slipping on, *e.g.*, oil or chemicals or bodily fluids might prompt the doctor to take proactive measures against infections or other conditions that are otherwise of little concern when one simply slips on water.  Thus, the substance allegedly causing the slip is "reasonably pertinent" to diagnosis or treatment.

Accordingly, United's Motion No. 12 is denied.  The Court will not require redaction of references to cooking oil.  United remains free, of course, to elicit testimony that these records mention cooking oil because Dedmon reported the presence of cooking oil, not because the creator of the record witnessed the cooking oil.

## B.   Evidence Regarding Reasonableness and Necessity of Treatment (Motion No. 3)

In Colorado, medical expenses are recoverable as damages only to the extent they were reasonable, necessary, and proximately caused by the injury flowing from the negligence.  *Lawson v. Safeway, Inc.*, 878 P.2d 127, 130–31 (Colo. App. 1994).  The reasonableness of a medical expense turns on what the medical service or product is reasonably worth, not necessarily what the provider charged or the patient paid.  *See*

*id.* at 131.[3]

United contends that (a) the reasonable value of a medical expense is necessarily a matter for expert testimony, (b) the Magistrate Judge's above-quoted order forbids Dedmon from offering any expert regarding reasonable value, and therefore (c) Dedmon must be forbidden from attempting to introduce evidence of reasonableness through some other source, such as lay testimony.  (ECF No. 124 ¶ 3.) United's argument turns on the first premise—whether reasonableness is necessarily a matter of expert testimony.

Various decisions from this Court have assumed or concluded, with little or no analysis, that the expert testimony is required to establish the reasonable value of a medical expense.  *See, e.g.*, *Xiong v. Thompson*, 2014 U.S. Dist. LEXIS 113622, at *2 (D. Colo. Aug. 15, 2014); *Davis v. Prop. & Cas. Ins. Co. of Hartford*, 2014 WL 1757952, at *1 (D. Colo. May 2, 2014); *White v. Kaiden*, 2006 WL 2346372, at *2 (D. Colo. Aug. 11, 2006).[4]  Experienced members of both the plaintiffs' and defendants' personal injury

---

[3] Various cases, including *Lawson* itself, sometimes rephrase the standard as "the *necessary and reasonable value* of the [medical] services rendered." *Id.* at 131 (emphasis added).  This suggests some sort of inquiry into "necessary value" (whatever that may mean) apart from "reasonable value."  From this Court's review of the case law, it appears more accurate to say that the necessity inquiry goes to the need for the medical service in light of the injured party's condition, whereas the reasonableness inquiry goes to the dollar value of an otherwise necessary medical service.  There is no inquiry into "necessary value."

[4] United claims that the Tenth Circuit has held as much in *Neiberger v. Fed Ex Ground Package System, Inc.*, 566 F.3d 1184 (10th Cir. 2009).  *Neiberger* does not go quite that far.  The plaintiff in *Neiberger* argued that her own testimony was enough for the jury to infer causation, necessity, and reasonableness.  *Id.* at 1193.  The Tenth Circuit disagreed, holding that the plaintiff "was not competent to testify to the reasonable need for her treatment or to its being caused by the accident (as opposed to her preexisting scoliosis or her smoking).  These were matters for expert medical opinion."  *Id.*  In other words, the Tenth Circuit held only that necessity (described as "reasonable need"—a term derived from Colorado's now-repealed no-fault auto insurance statute, *see id.* at 1186) and causation required expert testimony in light of

8

bar seem to agree.  *Compare* Heather A. Salg, *Billed Versus Paid—An Unresolved Evidentiary Question*, Colo. Law., May 2013, at 89, 91 (arguing that the Colorado Supreme Court's recent *Crossgrove* decision, discussed in further detail below, effectively requires both plaintiffs and defendants to designate a reasonable-value expert, thus driving up litigation costs for both sides) *with* Kyle Bachus, *Collateral Source Decisions Result in More Settlements and Fewer Motions*, Colo. Law., May 2013, at 89, 92 (responding to Salg's concern by noting that "[m]any Rule 35 experts can be endorsed to testify about the reasonable value of medical services" and that "the plaintiff's treating doctors, who already will be called to testify, can opine on reasonable value").

Dedmon claims that she needs no separately designated expert because "her treating physicians may testify that the treatment and their bills for that treatment were reasonable and necessary."  (ECF No. 160 at 3.)  Dedmon is incorrect.  The Magistrate Judge's order explicitly prohibits Dedmon from offering her treating physicians to testify regarding "the cost and reasonableness of past and future medical or rehabilitative treatment."  (ECF No. 80 at 16.)

Dedmon further argues the Colorado Court of Appeals' *Lawson* decision, *supra*, stands for the proposition that "evidence of reasonableness . . . does not have to be in the form of expert testimony."  (ECF No. 160 at 3.)  *Lawson* is not so clear.  As already noted, *Lawson* states the standard that medical expenses are recoverable as damages only to the extent they were reasonable, necessary, and proximately caused by the

---

her preexisting conditions.  The Tenth Circuit did not address the reasonable value requirement.

injury flowing from the negligence.  *Lawson*, 878 P.2d at 130–31.  *Lawson* expounded

on this standard in the context of an argument from the defendant that "the trial court

erred in instructing the jury that plaintiffs could recover for her medical expenses when

there was no medical testimony that her expenses were reasonable, necessary, and

proximately caused by her fall."  *Id.* at 130.  The Court of Appeals disagreed:

> The trial court's instruction did not suggest that plaintiff's
> medical expenses were in fact reasonable and necessary
> but rather merely advised the jury that plaintiff could recover
> for such expenses if the evidence demonstrated they were
> reasonable, necessary, and incurred as a result of her fall.
>
> Such evidence does not have to be in the form of expert
> testimony.  *See Briola v. Roy*, 170 Colo. 97, 459 P.2d 288
> (1969); *Palmer Park Gardens, Inc. v. Potter*, 162 Colo. 178,
> 425 P.2d 268 (1967).

*Id.* at 130–31.  Dedmon naturally emphasizes the first sentence of the second quoted

paragraph.  However, when *Lawson* actually applied that principle to the case at hand,

it noted that the plaintiff testified to the amount of medical expenses she incurred, while

"[o]ne of her doctors testified that the charges for medical services . . . were reasonable

and necessary, and that they were incurred as a direct result of the plaintiff's fall."  *Id.* at

131.  In other words, the plaintiff indeed presented her reasonable value evidence

through the testimony of an expert—her doctor.

The *Briola* case cited by *Lawson* is about establishing necessity without expert

testimony, not reasonableness.[5]  The other case cited by *Lawson*—*Palmer Park*

---

[5] *Briola* held that the trial court properly admitted evidence of nursing home expenses
without explicit evidence that the plaintiff's doctor prescribed nursing home care as opposed to
an in-home nurse.  Given the undisputed severity of the plaintiff's injuries, the Colorado
Supreme Court held that "[l]ay judgment would indicate [nursing home] care as the alternative
to expensive private nurse care in the [plaintiff's] home."  *Briola*, 459 P.2d at 292.  In other

*Gardens*—directly addresses reasonableness.  There, the defendant complained to the Colorado Supreme Court "that the [trial] court received in evidence statements of account for services of the doctors who treated the plaintiff, without any foundation testimony being offered as to the reasonable value of the services for which such charges were made."  *Palmer Park Gardens*, 425 P.2d at 272.  The Colorado Supreme Court responded by quoting one of its previous decisions, *Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960): "While the correct measure of damages is the necessary and reasonable value of the services rendered, rather than the amount which may have been paid for such services, nevertheless the amount paid for services is some evidence of their reasonable value."  *Palmer Park Gardens*, 425 P.2d at 272 (internal quotation marks omitted).  In other words, in light of *Kendall*, the Court apparently found that evidence of the amounts paid by the plaintiff was enough to give the jury "some evidence" of reasonable value, and therefore there was no error.

Notably, the Colorado Supreme Court recently limited the portion of *Kendall* on which *Palmer Park Gardens* relied.  *See Wal-Mart Stores, Inc. v. Crossgrove*, 276 P.3d 562 (Colo. 2012); *see also Smith v. Jeppsen*, 277 P.3d 224 (Colo. 2012); *Sunahara v.*

---

words, the jury's own experience was enough to infer that the plaintiff's injuries were such that she would need some form of constant nursing care, and the choice between a nursing home or in-home care was likewise within the jury's competence to assess.  *Briola* accordingly suggests that there are at least some circumstances where lay judgment is enough to infer necessity.  This is separate from the reasonableness inquiry.  Nonetheless, to the extent United believes that Dedmon also must have expert evidence of necessity, *Briola* suggests otherwise.  Any dispute in this regard would likely fall under the same sort of analysis as causation, discussed above at Part II.A.2.  The link between an injury and the need for certain care may be obvious to a layperson (such as the need for a cast to treat a broken arm).  To that extent, necessity requires no expert testimony.  But the less obvious the connection between the injury and the treatment, the more likely expert testimony is required, particular where preexisting conditions complicate the picture.  See *Neiberger*, 566 F.3d at 1193.

*State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649 (Colo. 2012).  All of these decisions address the collateral source rule, which requires, among other things, that trial courts exclude evidence of payments made to an injured plaintiff by a collateral source (such as an insurance company), given the high risk that a jury will reduce any award to the plaintiff by the amount of those collateral payments.  *See Crossgrove*, 276 P.3d at 565.[6] The Colorado Supreme Court in *Crossgrove* acknowledged that, when an insurance company pays for medical services, "friction" arises between the collateral source rule (which bars evidence of such payments) and the holding in *Kendall* that evidence of amounts paid for medical services is admissible to prove their reasonable value.  *Id.* at 566–67.  To resolve the conflict, the Court held that the collateral source rule always trumps, meaning that collateral source payments may not be admitted as evidence of reasonable value.  *Id.* at 567–68.  Consequently, *Kendall*'s statement of the law is no longer correct to the extent it is applied to payments made by insurance companies or other collateral sources.  By extension, cases such as *Palmer Park Gardens* and *Lawson* are no longer good law to the extent they imply that a plaintiff may avoid the need for expert reasonable value testimony simply by introducing evidence of amounts paid by an insurance company.

After *Crossgrove*, however, amounts *billed* by an insurance company are still proper evidence.  *See id.* at 567 (discussing a jury's likely reaction "if presented with evidence, for example, that the provider accepted $40,000 in satisfaction of a $250,000

---

[6] This portion of the collateral source rule was originally a matter of common law, but has since been codified by the Colorado Legislature at Colorado Revised Statute § 10-1-135(10)(a).  *See Smith*, 277 P.3d at 227–28.

medical bill"); *id.* at 568 (Eid, J., dissenting) ("The majority . . . would permit the jury to hear only the [amount billed by the healthcare provider], on the ground that the [amount paid by the insurance company] runs afoul of the collateral source doctrine."); Bachus, *supra*, at 92 (arguing that expert testimony is not necessarily required to establish reasonable value after *Crossgrove* because "[t]he plaintiff can also testify about the amounts billed"); Salg, *supra*, at 91 ("Many plaintiffs' attorneys in Colorado seem to read [cases such as *Crossgrove*] as indicating that billed amounts are now the exclusive evidence of reasonable value . . . .").[7]  Thus, it appears that amounts billed would continue to qualify as "some evidence" of reasonable value, *Kendall*, 349 P.2d at 994 (internal quotation marks omitted), even without expert testimony.

The question, then, is whether any of this applies in federal court.  "The admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998).  Thus, the fact that Colorado would admit evidence of reasonable value without expert testimony does not necessarily require this Court to do so.  On the other hand, this is not a question of a *conflict* between federal and state evidentiary standards, such as the federal *Daubert* standard for expert testimony versus the older *Frye* standard still used in some states. *Cf. Logerquist v. McVey*, 1 P.3d 113, 128 (Ariz. 2000) (rejecting claim that Arizona should abandon the *Frye* standard in favor of the *Daubert* standard).  There are no

---

[7] It would also appear that amounts paid by a plaintiff out-of-pocket are still admissible. *See Crossgrove*, 276 P.3d at 570 (Eid, J., dissenting) ("had the plaintiff in this case negotiated [a lower] amount [than that billed by his medical provider] and paid it [himself], there is no question that the figure would be admitted under the reasonable value precedent discussed above").  The Court has not been informed whether any such out-of-pocket payments are at issue in this case.

precedential authorities of which the Court is aware holding that the reasonable value of medical goods and services is, as a matter of federal law, necessarily beyond a lay jury's competence.

There is certainly an argument to be made in that regard.  It is probably a matter of common opinion that pricing for medical goods and services in this country is entirely mysterious.  Indeed, the very notion that there exists a "reasonable value" for this sort of thing seems dubious.  "Reasonable value" implies some sort of fair market value, yet there are very few areas in the medical field where providers appeal to potential patients through price competition.

To the extent these are valid concerns, however, they prove too much.  They imply that no one, not even an expert, could testify regarding the reasonable value of medical care because there is no reliable method for calculating reasonable value. Moreover, they suggest that amounts billed by a medical provider are essentially arbitrary and therefore irrelevant to the reasonable value inquiry.  *Cf*. Fed. R. Evid. 401 ("Evidence is relevant if * * * it has any tendency to make a fact more or less probable than it would be without the evidence . . . .").  Yet Colorado law continues to require an injured plaintiff to put on evidence of medical care's reasonable value, and this Court must follow Colorado law on that point.  Colorado law also appears to view medical bills as proper evidence of reasonable value.

In that light, the Court agrees with Colorado courts that medical bills are "some evidence" of reasonable value, even without supporting expert testimony.  *Kendall*, 349 P.2d at 994 (internal quotation marks omitted).  Thus, to the extent Dedmon has designated otherwise-admissible medical bills as exhibits, she may present those bills as

14

evidence of reasonable value.  United's Motion No. 3 is therefore denied.  United

remains free, of course, to attack Dedmon's reliance on medical bills, such as by eliciting

testimony from relevant witnesses that, in their experience, amounts billed often bear

little relation to what the healthcare provider is willing to accept in satisfaction of that bill.

**C.      Evidence of Medical Bills from Certain Providers (Motion Nos. 4 and 5)**

United argues that medical bills from Parker Adventist Hospital, Dr. Linda Tetor,

and Hilltop Family Medicine must be excluded because another order from the

Magistrate Judge bars Dedmon from introducing "the underlying medical records, which

would be required to lay the foundation for the admission of . . . [the] invoices."  (ECF

No. 124 ¶¶ 4–5.)  United's argument misstates the Magistrate Judge's ruling.

United refers to the Magistrate Judge's August 5, 2015 order striking Dedmon's

sixth and seventh supplemental disclosures as untimely.  (ECF No. 118.)  These

disclosures contained "medical billing reports."  (*Id.* at 3.)  In other words, the Magistrate

Judge did not bar the admission of "the underlying medical records," as United

describes it, but of the medical bills themselves.

The Magistrate Judge's order, which the Court upheld over Dedmon's Rule 72(a)

objection (*see* ECF No. 155), will be enforced according to its terms.  Thus, the very

evidence United seeks to exclude (certain medical bills) has already been excluded,

and United's Motion Nos. 4 and 5 are denied as moot.

**D.      Evidence of Lost Wages (Motion No. 6)**

United argues that Dedmon "may attempt to present evidence that she suffered

lost past and/or future earnings as a result of the subject incident.  Such evidence,

however, should be barred because alleged injuries and their impact on earning capacity can only be established by expert medical testimony." (ECF No. 124 ¶ 6.)  In support, United cites *Parra v. Atchison, Topeka & Santa Fe Railway Co.*, 787 F.2d 507 (10th Cir. 1986). *Parra* only addresses future earnings, not past wages. *Parra* held that "[w]here the injury is obscure . . . a loss of future earnings capacity must be established by expert medical testimony in order to avoid pure speculation on the part of the jury." *Id.* at 509. *Parra* involved a "complicated" back injury incurred during heavy labor. *Id.* The injury was all the more complicated under the circumstances because post-injury medical care revealed a latent, preexisting back condition that would have disqualified the plaintiff from heavy labor had it been known before the injury, and the plaintiff then received surgery that rendered his back "more stable after the surgery then prior to his accident." *Id.*

*Parra* reaffirms the principle the Court has already stated above: the effect of "obscure" injuries usually requires expert testimony, especially when preexisting conditions are involved. But, as also stated above, it is not clear precisely what sort of injuries Dedmon claims. The Court cannot say on this record that Dedmon may not present lay testimony regarding future earnings.

However, United asserts a separate ground for barring evidence regarding lost wages and future earnings: "[Dedmon] has never produced a Rule 26(a)(1)(A)(iii) computation of damages, nor any documents to support a claim for lost earnings." (ECF No. 124 ¶ 6.)  Very surprisingly, Dedmon does not respond to this argument. (*See* ECF No. 160 at 3.)

16

Rule 26(a)(1)(A)(iii) requires parties to supply in their initial disclosures

> a computation of each category of damages claimed by the
> disclosing party—who must also make available for
> inspection and copying as under Rule 34 the documents or
> other evidentiary material, unless privileged or protected
> from disclosure, on which each computation is based,
> including materials bearing on the nature and extent of
> injuries suffered[.]

Rule 26(e)(1)(A) requires parties to supplement their Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect."  Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Again, Dedmon has not responded in any manner to United's accusation that she failed to provide the required damages disclosure.  Accordingly, the Court must assume that she concedes the fact, and, by failing to argue substantial justification or harmlessness, she has confessed United's Motion No. 7.  United's Motion No. 7 is therefore granted.  Dedmon will not be permitted to testify regarding lost income, whether characterized as "past" or "future" earnings.

## E.   Summary Evidence of Medical Bills (Motion No. 7)

Dedmon intends to present her medical billing records through a Federal Rule of Evidence 1006 summary.  (ECF No. 160 at 3–4.)  United argues that she may not do so because that rule requires the propounding party to make the underlying documents available to the other parties and Dedmon "has failed to provide such documents to United."  (ECF No. 124 ¶ 7.)

This argument is confusing.  In the filings and arguments leading up to the Magistrate Judge's August 15, 2015 order, United confirmed that it had obtained at least some of Dedmon's billing records, largely through its own efforts.  (ECF No. 118 at 6.)  If United means to argue that Dedmon may not use those billing records because United gathered them (instead of Dedmon gathering and producing them), United is wrong.  Rule 1006 says nothing about which party gathered the documents underlying the summary.

The Magistrate Judge's August 15, 2015 order excluded the billing records produced in Dedmon's sixth and seventh supplemental disclosures, and so those billing records may not form any part of a Rule 1006 summary offered by Dedmon.  With that understanding, United's Motion No. 7 is denied.

**F.     Evidence Regarding Reasonable Care (Motion Nos. 8 and 9)**

Dedmon intends to argue that "[a] reasonably careful person, knowing that oil is more slippery than water, would exercise a degree of care commensurate to the danger because it is foreseeable that a person is more likely to slip and fall in cooking oil than in water."  (ECF No. 160 at 4.)  United seeks to bar any testimony of a "higher degree of care if the alleged hazard was cooking oil rather than water," and any testimony "that United was required to post an employee at the site of the alleged spill or to modify its wet floor warning signs to warn of spilled oil."  (ECF No. 124 ¶¶ 8, 9.)  United argues that Dedmon has provided "no foundation" for such assertions.  (*Id.*)

It is not clear what sort of foundation United believes is required.  The properties of hard floors, water, and cooking oil should be well known to any juror.  Dedmon is free to argue that, under the circumstances, reasonable care required more than what

18

United allegedly did. United's Motion Nos. 8 and 9 are denied.

**G.    Evidence Regarding Dedmon's Experience During Her Rule 35 Examination (Motion No. 10)**

United argues that Dedmon "may attempt to introduce testimony that [Dedmon] was harmed by Dr. Sabin, United['s] retained medical expert, during a medical examination." (ECF No. 124 ¶ 10.) United claims that such testimony is irrelevant and otherwise unduly prejudicial or confusing, in violation of Rule 403. (*Id.*) Dedmon responds that she "had cracked ribs at her exam and had a negative experience with [the doctor] during the exam." (ECF No. 160 at 4.) Dedmon claims that this is at least relevant to the doctor's "bias, prejudice or interest." (*Id.*)

As with nearly every other argument presented by United, the Court does not have a sufficient record to make a definitive ruling. In the abstract, the Court could see how evidence of unpleasant treatment by an independent medical examiner could suggest the examiner's bias. But such evidence could also conceivably be irrelevant, unduly prejudicial, or confusing. United's Motion No. 10 is denied without prejudice.

**H.    Hearsay Evidence of Cooking Oil (Motion No. 11)**

United says that Dedmon "may attempt to introduce testimony that [she] heard someone say that the alleged spill consisted of cooking oil." (ECF No. 124 ¶ 11.) United argues that this should be excluded as hearsay. (*Id.*) The Court once again does not have enough context to rule in United's favor. Whether such a statement is inadmissible hearsay turns in part on who the "someone" was. If this unidentified "someone" was an agent of United, the statement may not be hearsay at all. *See* Fed. R. Evid. 801(d)(2). United's Motion No. 11 is denied without prejudice.

**I.     Evidence of United's Counsel's Affiliation with Frontier Airlines (Motion No. 13)**

United worries that Dedmon "may attempt to introduce testimony that United's counsel has represented [Dedmon's] former employer, Frontier Airlines, in other matters.  Such information is irrelevant . . . ."  (ECF No. 124 ¶ 13.)  Dedmon responds that United's counsel represents Frontier Airlines in other matters and has even stated on its Rule 26 disclosures in this case that potential Frontier employee witnesses should only be contacted through United's counsel.  (ECF No. 160 at 5.)  Dedmon therefore anticipates that United's counsel will prepare these Frontier employees for their trial testimony, and "[t]he fact these witnesses are under the control of and have been prepared by the attorneys who represented their employers plays into the credibility assessment by the jury."  (*Id.* at 5, 6.)

The Court agrees with United.  Certainly witnesses who are employees of a party can be impeached through an inference that they are testifying in a manner designed to avoid displeasing their employer.  However, the Court can see no bias or other relevance specifically from the fact that the witnesses' employer's attorney prepared the witnesses for trial.  United's Motion No. 12 is granted.

**J.     Remaining Motions (Motion Nos. 14–17)**

United's Motion Nos. 14–17 request exclusion of any evidence about United's counsel being located in Chicago, any attempt to introduce evidence regarding United's insurance policies, any attempt to introduce evidence regarding United's net worth, and any attempt to introduce evidence of settlement offers.  (ECF No. 124 ¶¶ 14–17.)  Dedmon agrees not to introduce evidence on any of these topics.  (ECF No. 160 at 6.)

20

United's Motion Nos. 14–17 are therefore denied as moot.

## III.  DEDMON'S MOTION

Dedmon's Motion (ECF No. 133) appears to be an attempt to short-circuit any need to prove causation, necessity, or reasonableness of medical expenses.  Dedmon begins by arguing that the collateral source rule (discussed above at Part II.B) bars United from presenting any evidence that Dedmon has received benefits, such as payment for medical expenses, through workers compensation.  (ECF No. 133 at 1–2, 4.)  United agrees that the collateral source rule requires it to refrain from mentioning workers compensation.  (ECF No. 150 at 1.)[8]

Having established this, Dedmon goes on to request that this Court prevent United from challenging the reasonableness of any amount billed by a medical provider if billed under the workers compensation scheme.  Dedmon argues that, by statute, the Colorado Division of Workers Compensation sets the fee schedule for medical services provided to those receiving workers compensation benefits, and so such fees are *per se* reasonable.  (ECF No. 133 at 3–4.)  She further argues that, "given the administrative review and insurer scrutiny involved in obtaining . . . medical treatment [through the workers compensation system], it is essentially impossible for [her] to obtain medical treatment that is not reasonably necessary to treat the injuries she

---

[8] Although a state-created rule of evidence, Colorado's collateral source rule applies in federal court.  *See Macsenti v. Becker*, 237 F.3d 1223, 1240–41 (10th Cir. 2001).  The Court could locate no Colorado case specifically holding that workers compensation qualifies as a collateral source, but this Court has held as much in unpublished orders.  *See Boardman v. Hauck*, 2012 WL 3545681, at *2 (D. Colo. Aug. 16, 2012); *Bullock v. Daimler Trucks N. Am., LLC*, 2011 WL 4501923, at *5–7 (D. Colo. Sept. 28, 2011).  The parties also agree that workers compensation is a collateral source.  (ECF No. 133 at 1; ECF No. 150 at 1.)  Accordingly, the Court will treat that question as settled.

sustained in [the slip-and-fall leading to this lawsuit]." (*Id.* at 4.)

The upshot of Dedmon's argument is that anyone who obtains workers compensation benefits is excused from proving the causation, necessity, or reasonableness of his or her medical expenses. Dedmon cites no authority supporting this sweeping proposition. Indeed, Dedmon has not pointed this Court to any case where any plaintiff was excused from proving causation, necessity, or reasonableness for any reason. Dedmon's Motion is denied.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  United's Motion *in Limine* (ECF No. 124) is GRANTED IN PART and DENIED IN PART as stated above.

2.  Testimony or evidence regarding the following matters will be EXCLUDED:

    a.  Dedmon's alleged lost income, whether characterized as "past" or "future" earnings; and

    b.  United's counsel's representation of Frontier Airlines in other matters.

3.  Dedmon's Motion in Limine (ECF No. 133) is DENIED.

Dated this 8th day of February, 2016.

BY THE COURT:

_____
William J. Martínez
United States District Judge